**SHUMAN, GLENN & STECKER**
Kip B. Shuman, SBN 145842
100 Pine Street, Suite 1250
San Francisco, CA 94101
Telephone: (303) 861-3003
Facsimile: (303) 536-7849
Email: kip@shumanlawfirm.com

*Counsel for Plaintiff*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ROLAND DAVIES, derivatively on behalf of IMMUNITYBIO, INC.,

        Plaintiff,

    v.

PATRICK SOON-SHIONG, RICHARD ADCOCK, CHERYL L. COHEN, CHRISTOBEL SELECKY, LINDA MAXWELL, WESLEY CLARK, BARRY J. SIMON, BRUCE WENDEL, and MICHAEL D. BLASZYK,

        Defendants,

    and

IMMUNITYBIO, INC.,

        Nominal Defendant.

Case No.:

**DEMAND FOR JURY TRIAL**

**<u>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT</u>**

Verified Shareholder Derivative Complaint

## INTRODUCTION

Plaintiff Roland Davies ("Plaintiff"), by and through his undersigned counsel, derivatively and on behalf of nominal defendant ImmunityBio, Inc. ("ImmunityBio" or the "Company"), files this Verified Shareholder Derivative Complaint against individual defendants Patrick Soon-Shiong ("Soon-Shiong"), Richard Adcock ("Adcock"), Cheryl L. Cohen ("Cohen"), Christobel Selecky ("Selecky"), Linda Maxwell ("Maxwell"), Wesley Clark ("Clark"), Barry J. Simon ("Simon"), Bruce Wendel ("Wendel"), and Michael D. Blaszyk ("Blaszyk") (collectively, the "Individual Defendants," and together with nominal defendant ImmunityBio, the "Defendants") for breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets under Delaware law, and against defendant Soon-Shiong for contribution under Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"). As for Plaintiff's complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, U.S. Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding ImmunityBio, legal filings, including those in the pending federal securities fraud class action captioned *Douglas v. ImmunityBio, Inc., et al.,* Case No. 2:26-cv-03261 (C.D. Cal.) (the "Securities Action"), news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action that seeks to remedy serious wrongdoing committed by the Individual Defendants from January 2026 through March

Verified Shareholder Derivative Complaint

2026 (the "Relevant Period"), including the issuance of false and misleading statements regarding the Company's lead biologic product, ANKTIVA ("Anktiva"), which has resulted in the Company's recent receipt of a warning letter (the "Warning Letter") from the U.S. Food and Drug Administration (the "FDA"), as well as the initiation of the Securities Action against ImmunityBio.

2.      Specifically, on January 19, 2026, defendant Soon-Shiong, the Company's founder, controlling stockholder, Executive Chairman, and Global Chief Scientific and Medical Officer ("GCSMO"), appeared on a podcast, a link to which was posted on the Company's website (as of the time of this action, the podcast has been removed from the Company's website, presumably due to the Warning Letter) (the "Podcast").

3.      Defendant Soon-Shiong made a series of false and misleading statements on the Podcast about Anktiva which materially overstated Anktiva's capabilities.

4.      A little over two months later, on March 24, 2026, the Warning Letter (dated March 13, 2026) from the FDA was revealed publicly, highlighting statements made during the Podcast by defendant Soon-Shiong that were materially false and misleading.

5.      Following the publication of the Warning Letter, ImmunityBio's common stock fell by $1.98 per share, or *21%*, to close at $7.42 per share on March 24, 2026.  The Conpany's stock price has only continued to decline since March 24, 2026, and currently trades for approximately $7 per share.

6.      In light of the Individual Defendants' serious misconduct—which has subjected the Company to, among other things, the Warning Letter from the FDA, the Securities Action, the need to undertake internal investigations, the need to implement adequate internal controls, losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who were improperly overcompensated by the Company and/or who benefitted from the wrongdoing alleged herein—the Company will have to expend many millions of dollars.

7.      The Company has been substantially damaged as a result of the Individual

3

Verified Shareholder Derivative Complaint

Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

8.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, who are the Company's current directors, of the collective engagement in fraud and misconduct by the Company's directors, of the substantial likelihood of the directors' liability in this derivative action and of defendant Soon-Shiong's liability in the Securities Action, and of their not being disinterested and/or independent directors, a majority of the members of the Board cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 10(b) of the Exchange Act (15. U.S.C. § 78j(b)) and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)). Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

10.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

11.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

12.     Venue is proper in this District because a substantial portion of the transactions and wrongs complained of herein occurred in this District, the Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## THE PARTIES

### Plaintiff

13.     Plaintiff is a current shareholder of ImmunityBio. Plaintiff has continuously held ImmunityBio common stock since 2021.

Verified Shareholder Derivative Complaint

**Nominal Defendant ImmunityBio**

14. ImmunityBio is a Delaware corporation which maintains its corporate headquarters in San Diego, California. Within this District, ImmunityBio maintains laboratories in Culver City, California and El Segundo, California. As alleged herein, the Warning Letter was addressed by the FDA to defendant Adcock, ImmunityBio's President and Chief Executive Officer ("CEO"), at the Company's facility in Culver City, California. ImmunityBio's common stock trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "IBRX."

**The Individual Defendants**

15. Defendant Soon-Shiong is the founder of the Company and is also its controlling stockholder, as he and his affiliates held approximately 64.2% of the Company's outstanding shares as of December 31, 2025, according to ImmunityBio's most recent Annual Report on SEC Form 10-K (the "2025 10-K"), filed on February 23, 2026. Defendant Soon-Shiong has served as Executive Chairman of the Company's Board of Directors (the "Board") since 2020 and has also served as ImmunityBio's GCSMO since 2021. Previously, defendant Soon-Shiong served as Chairman of the Board and as the Company's CEO from 2015 to 2020. Defendant Soon-Shiong is a named individual defendant in the Securities Action. In the Company's most recent annual proxy statement filed with the SEC and disseminated to stockholders on April 30, 2025, the Board admits that defendant Soon-Shiong is not an independent director, and in the Company's 2025 10-K, the Board admits that "the interests of Dr. Soon-Shiong may not coincide with the [C]ompany's interests" and that "Dr. Soon-Shiong is in a position to control the outcome of corporate actions that require, or may be accomplished by, stockholder approval, including…the election or removal of directors".

16. Defendant Adcock has served as the Company's CEO since 2020 and has also served as ImmunityBio's President and as a Board member since 2021. In the Company's

Verified Shareholder Derivative Complaint

most recent annual proxy statement filed with the SEC and disseminated to stockholders on April 30, 2025, the Board admits that defendant Adcock is not an independent director.

17. Defendant Cohen has served as a member of the Board since 2019 and also served during the Relevant Period and continues to serve as a member of the Board's Audit Committee (the "Audit Committee").

18. Defendant Selecky has served as a member of the Board since 2021 and also served during the Relevant Period and continues to serve as a member of the Audit Committee.

19. Defendant Maxwell has served as a member of the Board since 2021 and also served during the Relevant Period and continues to serve as a member of the Audit Committee.

20. Defendant Clark has served as a member of the Board since 2021.

21. Defendant Simon has served as a member of the Board since 2007 and as the Company's Chief Corporate Affairs Officer ("CCAO") since 2021. Defendant Simon previously served as ImmunityBio's President and Chief Administrative Officer from January 2017 to March 2021, as President and Chief Operating Officer from 2015 to 2016, and as President and CEO from 2007 to 2015. In the Company's most recent annual proxy statement filed with the SEC and disseminated to stockholders on April 30, 2025, the Board admits that defendant Simon is not an independent director.

22. Defendant Wendel has served as a Board member since December 2025.

23. Defendant Blaszyk has served as a Board member since 2015 and also served during the Relevant Period and continues to serve as Chairman of the Audit Committee.

### FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

24. By reason of their positions as officers, directors, and/or fiduciaries of ImmunityBio and because of their ability to control the business and corporate affairs of ImmunityBio, the Individual Defendants owed ImmunityBio and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their

utmost ability to control and manage ImmunityBio in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of ImmunityBio and its shareholders so as to benefit all shareholders equally.

25.     Each director and officer of the Company owes to ImmunityBio and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

26.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of ImmunityBio, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

27.     To discharge their duties, the officers and directors of ImmunityBio were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

28.     Each Individual Defendant, by virtue of their position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of ImmunityBio, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised the Company's Board at all relevant times.

29.     As senior executive officers and/or directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded

Verified Shareholder Derivative Complaint

on the NASDAQ exchange, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, including the dissemination of false information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information. Further, they had a duty to ensure the Company remained in compliance with all applicable laws.

30.    To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of ImmunityBio were required to, among other things:

(a)    ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, California, and the United States, and pursuant to ImmunityBio's corporate governance and applicable codes of conduct and/or ethics;

(b)    conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)    remain informed as to how ImmunityBio conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)    establish and maintain systematic and accurate records and reports of the business and internal affairs of ImmunityBio and procedures for the reporting of the

Verified Shareholder Derivative Complaint

business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that ImmunityBio's operations would comply with all applicable laws and ImmunityBio's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

31.     Each of the Individual Defendants further owed to ImmunityBio and the shareholders the duty of loyalty requiring that each favor ImmunityBio's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

32.     At all times relevant hereto, the Individual Defendants were the agents of each other and of ImmunityBio and were at all times acting within the course and scope of such agency.

33.     Because of their advisory, executive, managerial, directorial, and controlling positions with ImmunityBio, each of the Individual Defendants had access to adverse, nonpublic information about the Company.

Verified Shareholder Derivative Complaint

34.    The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by ImmunityBio.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

35.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

36.    The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, waste of corporate assets, gross mismanagement, abuse of control, and violations of the Exchange Act; (ii) conceal adverse information concerning the Company's operations, financial condition, legal compliance, future business prospects, and internal controls; and (iii) artificially inflate the Company's stock price.

37.    The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully or recklessly to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants who is a director of ImmunityBio was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

Verified Shareholder Derivative Complaint

38.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted in the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

39.     At all relevant times hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of ImmunityBio and was at all times acting within the course and scope of such agency.

## IMMUNITYBIO'S CODE OF BUSINESS CONDUCT AND ETHICS

40.     The Individual Defendants, as directors and/or officers of the Company, are required to comply at all times with ImmunityBio's Code of Business Conduct and Ethics (the "Code of Conduct").  In pertinent part, the Code of Conduct states:

> we expect you to support our integrity by behaving lawfully and ethically at all times. This Code of Business Conduct and Ethics (Code) serves as one of the guideposts for your behavior ...
>
> In general, we expect you to:
>
> • Comply with all applicable laws, rules, and regulations;
>
> • Take responsibility for your actions and follow through on your commitments;
>
> • Avoid situations where your personal interests are, or appear to be, in conflict with ImmunityBio's interests;
>
> • Protect and properly use ImmunityBio's information, assets, and resources;
>
> • Protect information that is owned by our customers and vendors;

Verified Shareholder Derivative Complaint

- Communicate in an honest and open manner; and

- Adhere to ImmunityBio's standards for protecting the environment and the safety and health of our employees, our customers, our community, and our contractors.

***

If you violate the law, this Code, the ImmunityBio comprehensive compliance program, or another ImmunityBio policy or procedure, you will be subject to discipline up to and including immediate termination of employment...

41.    The Code of Conduct sets forth several detailed principles, the first of which is "Principle 1: Be Honest and Ethical".  Pursuant to this specific principle, the Code of Conduct requires the Individual Defendants to "[n]ever take unfair advantage of anyone through manipulation, concealment, disclosure of confidential information, or false or misleading statements," and further states that "[y]ou are personally responsible for the integrity of the information, reports, and records under your control. You must never make any false or artificial entries for any purpose."

42.    The Code of Conduct's "Principle 2: Comply With The Law" states, in pertinent part:

Pharmaceutical Laws

The U.S. Food and Drug Administration (FDA) is the federal agency responsible for overseeing the safety of pharmaceuticals, biologics, and other products under the Federal Food, Drug, and Cosmetic Act (FD&C Act) and its implementing regulations. FDA regulates almost every aspect of ImmunityBio's business, including the research, development, manufacturing, distribution, marketing, and promotion of our products.

*Labeling, Advertising, and Promotion*

FDA regulations require drug labeling and promotional material to be accurate, balanced, and truthful. Among other things, FDA regulations require all materials and messaging used to promote our products to be fair and balanced and consistent with FDA approved labeling. To ensure compliance with FDA regulations, you must comply with all ImmunityBio policies and procedures related to promotional activities.

12

Verified Shareholder Derivative Complaint

## IMMUNITYBIO'S AUDIT COMMITTEE CHARTER

43.    ImmunityBio also maintains an Audit Committee Charter (the "Audit Committee Charter") which governs the Audit Committee's roles and responsibilities. The Audit Committee Charter states that the Audit Committee's purpose is to assist the Board with oversight as to:

• The Company's accounting and financial reporting processes and internal control over financial reporting, as well as the audit and integrity of the Company's financial statements.

• The qualifications, independence and performance of the Company's independent registered public accounting firm (the "independent auditor").

• The Company's compliance with applicable law (including U.S. federal securities laws and other legal and regulatory requirements).

• Risk assessment and risk management.

• Such other matters as provided in this charter.

44.    Pursuant to the Audit Committee Charter, the Audit Committee's specific responsibilities include, among others, the following:

• Reviewing and discussing with management, the internal auditors, if applicable, and the independent auditor the adequacy and effectiveness of the Company's internal controls, including any changes, significant deficiencies or material weaknesses in those controls reported by the independent auditor, the internal auditors, if applicable, or management and any special audit steps adopted in light of any material control deficiencies, and any fraud, whether or not material, that involves management or other Company employees who have a significant role in the Company's internal controls.

• Reviewing and discussing with management, the internal auditors, if applicable, and the independent auditor: (i) the overall adequacy and effectiveness of the Company's legal, regulatory and ethical compliance programs, including the Company's Code of Business Conduct and Ethics, compliance with anti-bribery and anti-corruption laws and regulations, and compliance with export control regulations and (ii) reports regarding compliance with applicable laws, regulations and internal compliance programs.

Verified Shareholder Derivative Complaint

• Discussing with management and the independent auditor any correspondence with regulators or governmental agencies and any published reports that raise material issues regarding the Company's financial statements or accounting policies.

• Discussing with the Company's senior legal officer any legal matters that may have a material impact on the financial statements or the Company's compliance procedures.

• Reviewing and discussing with management, the internal auditors, if applicable, and the independent auditor the Company's major risk exposures (whether financial, operating or otherwise) and the steps management has taken to monitor, control and report those exposures, including the Company's guidelines and procedures to govern the process by which risk assessment and risk management are handled.

45. In violation of the Audit Committee Charter, the Individual Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, gross mismanagement, abuse of control, waste of corporate assets, and violations of the Exchange Act. Moreover, in violation of the Audit Committee Charter, the Individual Defendants failed to maintain the accuracy of the Company records and reports, comply with laws and regulations, act in good faith and diligence without misstating, misrepresenting, or omitting material facts, and properly report violations of the Audit Committee Charter.

## THE INDIVIDUAL DEFENDANTS' MISCONDUCT

### A. Materially False and Misleading Statements Issued During the Relevant Period

46. On January 19, 2026, defendant Soon-Shiong appeared on the Podcast, a link to which was posted on the Company's website (as of the time of this action, the Podcast has been removed from ImmunityBio's website, presumably due to the Warning Letter from the FDA).

14

Verified Shareholder Derivative Complaint

47.     Defendant Soon-Shiong made the following statements on the Podcast (alterations taken from the FDA's Warning Letter):

•     "[Interleuken-15 (IL-15) is a molecule that] stimulates the natural killer (NK) cell and the T cell...the most important molecule that could cure cancer...nobody could figure out how to get IL-15 into your body with a single jab, and that is Anktiva."

•     "We have now discovered and developed this drug...approved for bladder cancer, but it actually can treat all cancers...is this little vial that you inject subcutaneously that really is on the path to curing the cancer." As the FDA noted, this statement was made in conjunction with the on-screen claim, "Cancer Therapeutic Vaccine (BioShield)."

•     "We have the therapy to prevent cancer if you were exposed to radiation, and that's Anktiva". As the FDA noted, that statement was made "while the screen displays a patient brochure, titled "Getting Started with ANKTIVA®""

•     "This thing called checkpoint inhibitors...It fails. The only thing that can rescue it is Anktiva...If you have lung cancer, you get radiation, chemotherapy, and you fail. And then you get a checkpoint inhibitor, and you fail. There's nothing left. The only thing left is this terrible drug called docetaxel..."

48.     Defendant Soon-Shiong's statements on the Podcast in the preceding paragraph were materially false and misleading for a number of reasons.  Among others, as the FDA later noted, defendant Soon-Shiong's representations on the Podcast "misleadingly suggest that Anktiva will allow all NMIBC patients treated with Anktiva to be cancer-free for the long term, when this has not been demonstrated."  Further, defendant Soon-Shiong's claim that Anktiva is a cancer vaccine was false.

Verified Shareholder Derivative Complaint

49. Defendant Soon-Shiong's above representations on the Podcast were materially false and misleading because those statements misrepresented and failed to disclose the following adverse facts pertaining to ImmunityBio's business, operations, and prospects, which were known to the Individual Defendants or recklessly disregarded by them. Specifically, the Individual Defendants made false and/or misleading statements and/or failed to disclose that: (1) defendant Soon-Shiong materially overstated Anktiva's capabilities; and (2) as a result, the Individual Defendants' statements about ImmunityBio's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## B. The Truth Emerges

50. On March 24, 2026, the Warning Letter (dated March 13, 2026) from the FDA to the Company's President and CEO, defendant Adcock, at the Company's Culver City, California address, was publicized.

51. The Warning Letter stated the following about defendant Soon-Shiong's claims about Anktiva on the Podcast (as well as claims made about Anktiva in certain television advertisements (undated)):

The Office of Prescription Drug Promotion (OPDP) of the U.S. Food and Drug Administration (FDA) has reviewed the promotional communications, a direct-to-consumer (DTC) broadcast advertisement (US-ANK-250065-v1) (TV ad) submitted by ImmunityBio, Inc. (ImmunityBio) under cover of Form FDA 2253 *and a DTC podcast (podcast) titled, "Is the FDA BLOCKING Life Saving Cancer Treatments?" regarding ANKTIVA® (nogapendekin alfa inbakicept-pmln) solution, for intravesical use (Anktiva). The podcast features Dr. Patrick Soon-Shiong, Executive Chairman and Global Chief Scientific and Medical Officer for ImmunityBio. The podcast originally aired on The Sean Spicer Show on January 19, 2026, and can also be*

16

Verified Shareholder Derivative Complaint

*accessed through ImmunityBio's website. The FDA Bad Ad Program also received complaints regarding promotional communications for Anktiva. FDA has determined that the TV ad and podcast are false or misleading. Thus, the TV ad and podcast misbrand Anktiva and make the distribution of the drug in violation of the Federal Food, Drug, and Cosmetic Act (FD&C Act). 21 U.S.C. 352(a), (n); 321(n); 331(a). See 21 CFR 202.1 (e)(5); (e)(7)(viii).* Furthermore, the TV ad and podcast provide evidence that Anktiva is intended for new uses for which it lacks approval, and for which its labeling does not provide adequate directions for use. 21 U.S.C. 352(f)(1); 331(a). See 21 CFR 201.5; 201.100; 201.115; 201.128. *In addition, the podcast was not submitted at the time of initial dissemination or publication as required by 21 CFR 314.81(b)(3)(i). These violations are concerning from a public health perspective because the promotional communications create a misleading impression that Anktiva, a treatment for a certain type of bladder cancer, can cure and even prevent all cancer.* Cancer is the second leading cause of death in the United States and a significant public health concern that affects a vulnerable patient population at increased risk of medical complications and adverse outcomes.

52. In the Warning Letter, the FDA highlighted the following statements that defendant Soon-Shiong made on the Podcast as false and misleading regarding Anktiva's purported efficacy:

Verified Shareholder Derivative Complaint

- DR. SOON-SHIONG (13:27): "[Interleukin-15 (IL-15) is a molecule that] stimulates the natural killer (NK) cell and the T cell…the most important molecule that could cure cancer…nobody could figure out how to get IL-15 into your body with a single jab, and that is Anktiva."

- ON-SCREEN (13:47): "ANKTIVA BioShield" presented inside a glowing, circular image and "IMMUNITYBIO" prominently presented at the bottom of the frame

- DR. SOON-SHIONG (19:40): "We have now discovered and developed this drug…approved for bladder cancer, but it actually can treat all cancers…is this little vial that you inject subcutaneously that really is on the path to curing the cancer." In conjunction with the on-screen claim, "Cancer Therapeutic Vaccine (BioShield)."

- DR. SOON-SHIONG (47:03): "We have the therapy to prevent cancer if you were exposed to radiation, and that's Anktiva," while the screen displays a patient brochure, titled "Getting Started with ANKTIVA®"

53.    In the Warning Letter, the FDA further said the following about how the claims on the Podcast about Anktiva were false:

The representations in the TV ad and podcast are misleading for multiple reasons. ***First, the representations in the TV ad and podcast misleadingly suggest that Anktiva will allow all NMIBC patients treated with Anktiva to be cancer-free for the long term***, when this has not been demonstrated. According to the CLINICAL STUDIES section of the PI, efficacy of Anktiva was evaluated in the QUILT-3.032 study, a single-arm, multicenter trial in 77 adults with BCG-unresponsive, high-risk, NMIBC with CIS with or without Ta/T1 papillary disease following transurethral resection. The major efficacy outcome measures were complete response (CR) at any time (as defined by negative results for cystoscopy [with transurethral resection of bladder tumor and biopsies as applicable] and urine cytology) and duration of response (DOR). As the papillary component of the tumor was resected prior to

18

Verified Shareholder Derivative Complaint

treatment with Anktiva and BCG, only the effect on the CIS component could be directly observed. The CR was 62% (95% CI: 51,73) for patients treated with Anktiva and BCG (n=77). Of the 62% of patients who responded, 58% had a DOR greater than or equal to 12 months, and 40% had a DOR greater than or equal to 24 months. Therefore, these data do not support that treatment with Anktiva will allow all NMIBC patients to be cancer-free for the long term, as suggested in the TV ad and podcast, and we are not aware of other data that would support such suggestions. Moreover, the claims and representations that Anktiva is a "single jab" and a "little vial...on the path to curing the cancer" misleadingly suggest that Anktiva has a treatment effect as a single agent. The efficacy of Anktiva was established based on the results of Cohort A of QUILT-3.032, which only studied Anktiva in combination with BCG, while Cohort C, which evaluated Anktiva as a single agent in the same disease setting, was stopped early for futility. We are not aware of data that would support suggestions that Anktiva alone is an effective treatment for NMIBC.

Furthermore, QUILT-3.032 did not provide interpretable results on disease-free survival (DFS), and we are not aware of data that support the efficacy claims and representations that Anktiva can "cure" cancer. As QUILT-3.032 was designed as a single-arm study (i.e., with no comparator arm), and DFS is a time-to-event efficacy endpoint, the reported DFS results are uninterpretable; absent an appropriate comparator, it is not possible to determine if lack of recurrence is attributable to Anktiva or to other factor(s), such as the natural history of the disease. Claims such as "treat the tumor, and it doesn't come back" and "the most important molecule that could cure cancer...and that is Anktiva" suggest an improvement on the DFS endpoint

Verified Shareholder Derivative Complaint

even though the single-arm design of the QUILT-3.032 study was not capable of establishing improvement on this time-to-event efficacy endpoint.

In addition, the representation in both the TV ad and podcast that Anktiva is a cancer vaccine is false and is further compounded by the claim in the podcast that Anktiva is "the therapy to prevent cancer if you were exposed to radiation." According to the CLINICAL PHARMACOLOGY, Mechanism of Action section of the PI, Anktiva is an IL-15 receptor agonist that results in proliferation and activation of NK, CD8+ and memory T cells without proliferation of immuno-suppressive Treg cells. Anktiva is not a vaccine, and we are not aware of data showing that Anktiva has a preventative effect in patients without cancer, including patients who have been exposed to radiation.

*The consistent and pervasive misleading efficacy claims and representations presented across promotional materials on different platforms are especially concerning from a public health perspective, given that they grossly misrepresent the benefits of Anktiva. We are not aware of data that would support the claims and representations described above.*

54.    The Warning Letter also highlighted the following claims, as discussed above, which were false and misleading:

Verified Shareholder Derivative Complaint

*TV ad and Podcast*

The podcast includes the following claims:

- DR. SOON-SHIONG (19:40): "We have now discovered and developed this drug…It's approved for bladder cancer, but it actually can treat all cancers."

- DR. SOON-SHIONG (36:04): "This thing called checkpoint inhibitors…It fails. The only thing that can rescue it is Anktiva…If you have lung cancer, you get radiation, chemotherapy, and you fail. And then you get a checkpoint inhibitor, and you fail.
There's nothing left. The only thing left is this terrible drug called docetaxel…"

- DR. SOON-SHIONG (47:03): "We have the therapy to prevent cancer if you were exposed to radiation and that's Anktiva."

55.     The Warning Letter provided the following additional information for why those statements were false and misleading:

These claims and representations from ImmunityBio, represented by Dr. Soon-Shiong, provide evidence that Anktiva is intended for new uses for which it lacks approval in the United States and for which its labeling does not provide adequate directions for use. Anktiva is not approved as a treatment for "all cancers" or lung cancer after failure of checkpoint inhibitors, nor is it approved for any form of cancer prevention. Anktiva's labeling does not contain adequate directions for such uses, thereby rendering the drug misbranded.

***These claims and representations, which misleadingly suggest that Anktiva is safe and effective for uses for which it is not approved, are especially concerning from a public health perspective.*** Bladder cancer represents only 4.2% of the estimated 2,041,910 new cancer cases in 20258 and BCG-unresponsive, high-risk, NMIBC with CIS with or without papillary tumors

21

Verified Shareholder Derivative Complaint

represents an even smaller proportion of these cases. These broad promotional claims misleadingly suggest that Anktiva has been shown to be appropriate for use in the vast majority of patients with cancer when it is only approved for use in patients with a specific type of NMIBC.

In addition, the representations made in both the TV ad and podcast provide evidence that Anktiva is intended for use as an injection, including subcutaneously, even though its labeling does not provide adequate directions for use in this manner. ***As noted above, Dr. Soon-Shiong refers to Anktiva as a "single jab" and a "little vial that you inject subcutaneously" during the podcast***. Similarly, after introducing Anktiva and referring to its approval, the TV ad displays the Anktiva logo on the entire screen, in large font, followed by footage of a vial of Anktiva being removed from its carton. The TV ad then presents a close-up view of a vial of Anktiva being picked up, followed by a health care practitioner preparing to administer a dose, and then a patient in a chair after an injection. Subsequently, another patient is being injected in the arm with a syringe.

***However, according to the DOSAGE AND ADMINISTRATION section of the PI, Anktiva is for intravesical use only, and should not be administered by subcutaneous or intravenous or intramuscular routes. These representations from the TV ad and podcast, which erroneously suggest that Anktiva has been shown to be safe and effective for use in injectable routes of administration, are particularly alarming from a public health perspective given that the safety and efficacy of Anktiva when administered via a route other than intravesically are unknown at this time***.

Verified Shareholder Derivative Complaint

56.    On March 24, 2026, *Bloomberg* published an article entitled "ImmunityBio Plunges After Getting FDA Warning on Cancer Drug". The *Bloomberg* article stated the following:

> ImmunityBio Inc.'s shares plunged after the biotechnology company and its billionaire executive chairman, Patrick Soon-Shiong, were hit with a [FDA] warning letter for false and misleading promotion of its bladder cancer drug Anktiva.

> The warning letter takes issue with both a TV ad for the drug, which is currently approved for a specific type of bladder cancer, and a January episode of The Sean Spicer Show where Soon-Shiong said it could treat "all cancers."

57.    On this news, ImmunityBio common stock fell by $1.98 per share, or *21%*, to close at $7.42 per share on March 24, 2026.  The Company's stock has only continued to decline and currently trades for approximately $7 per share.

## DAMAGES TO IMMUNITYBIO

58.    As a direct and proximate result of the Individual Defendants' conduct, ImmunityBio has lost and will continue to lose and expend many millions of dollars.

59.    Such expenditures include, but are not limited to, legal fees, costs, and any payments for resolution of or to satisfy a judgment associated with the Securities Action, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

60.    Such expenditures also include, but are not limited to, fees, costs, and any payments for resolution of or to satisfy judgments associated with any other lawsuits filed against the Company or the Individual Defendants based on the misconduct alleged herein, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

61.    Such expenditures will also include costs incurred in any internal investigations pertaining to violations of law, costs incurred in defending any investigations or legal actions taken against the Company due to its violations of law, and payments of any fines or settlement amounts associated with the Company's violations.

62.    Additionally, these expenditures include, but are not limited to, unjust

Verified Shareholder Derivative Complaint

compensation, benefits, and other payments provided to the Individual Defendants who breached their fiduciary duties to the Company.

63.     As a direct and proximate result of the Individual Defendants' conduct, ImmunityBio has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations.

## DERIVATIVE ALLEGATIONS

64.     Plaintiff brings this action derivatively and for the benefit of ImmunityBio to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of ImmunityBio, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and violations of the Exchange Act.

65.     ImmunityBio is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

66.     Plaintiff is, and has been at all relevant times, a shareholder of ImmunityBio. Plaintiff will adequately and fairly represent the interests of ImmunityBio in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

67.     Plaintiff incorporates by reference and realleges each and every allegation stated above as if fully set forth herein.

68.     A pre-suit demand on the Board is futile and, therefore, excused. At the time that this action was filed, ImmunityBio's Board consisted of the nine (9) Individual Defendants: Soon-Shiong, Adcock, Cohen, Selecky, Maxwell, Clark, Simon, Wendel, and Blaszyk. Plaintiff needs only to adequately allege demand futility as to five (5) of the nine directors that were on the Board at the time this action was filed.

69.     Demand is excused as to all nine of the Individual Defendants because each

24

Verified Shareholder Derivative Complaint

one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material fact. The Individual Defendants, as alleged herein, were aware or should have been aware of the misinformation being spread by the Company. This renders the Individual Defendants unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

70. In complete abdication of their fiduciary duties, the Individual Defendants either knowingly or recklessly caused or permitted ImmunityBio to issue materially false and misleading statements. Specifically, the Individual Defendants caused ImmunityBio to issue false and misleading statements which were intended to make ImmunityBio appear more profitable and attractive to stockholders. Moreover, the Individual Defendants caused the Company to fail to maintain adequate internal controls. As a result of the foregoing, the Individual Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

71. Defendant Soon-Shiong is not disinterested or independent, and therefore, is incapable of considering demand because he is the Company's founder and controlling shareholder – beneficially owning 64.2% of the Company's common stock as of December 31, 2025, per the Company's SEC fiings, and also currently serving as ImmunityBio's GCSMO. Defendant Soon-Shiong, thus, derives substantially all of his wealth and livelihood from his relationship with the Company, making him not disinterested or independent. The lack of independence and financial benefits received by defendant Soon-Shiong renders him incapable of impartially considering a demand to commence and vigorously prosecute this action. In addition, defendant Soon-Shiong is a defendant in the Securities Action, which seeks to hold him liable for much of the same wrongdoing as is alleged herein. Furthermore, the Company's most recent annual proxy statement admits that defendant Soon-Shiong is not an independent director, and the Company's 2025 10-K

Verified Shareholder Derivative Complaint

admits that "the interests of Dr. Soon-Shiong may not coincide with the [C]ompany's interests". Accordingly, there is reason to doubt that defendant Soon-Shiong could respond independently and disinterestedly to a demand.

72. Because defendant Soon-Shiong, as the other eight Board members have all admitted in the Company's 2025 10-K which they each signed, is "in a position to control the outcome of corporate actions that require, or may be accomplished by, stockholder approval, including…the election or removal of directors", there is reason to doubt that the other eight Board members – defendants Adcock, Cohen, Selecky, Maxwell, Clark, Simon, Wendel, and Blaszyk – could independently and objectively consider a demand to bring claims against defendant Soon-Shiong for his alleged wrongdoing. No reasonable ImmunityBio stockholder would reasonably believe that defendants Adcock, Cohen, Selecky, Maxwell, Clark, Simon, Wendel, and Blaszyk would independently and objectively evaluate a stockholder demand to assert claims against defendant Soon-Shiong based on his false and misleading Podcast statements giving rise to this action, in light of defendant Soon-Shiong's ability to control the re-election or removal of those same directors from the Board.

73. Defendant Adcock is not disinterested or independent, and therefore, is incapable of considering demand because, defendant Adcock is, and was at all relevant times, an employee of ImmunityBio (serving as CEO since 2020 and President since 2021) who derived substantially all of his wealth and livelihood from his relationship with the Company, making him not disinterested or independent. The lack of independence and financial benefits received by defendant Adcock renders him incapable of impartially considering a demand to commence and vigorously prosecute this action. Furthermore, the Company's most recent annual proxy statement concedes that defendant Adcock is not an independent director. As such, defendant Adcock cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, as that would expose him to substantial liability and threaten his livelihood.

Verified Shareholder Derivative Complaint

74.     Defendant Simon is not disinterested or independent, and therefore, is incapable of considering demand because, defendant Simon is, and was at all relevant times, an employee (serving as CCAO since 2021, and before that, in various executive roles, including CEO, since 2007) who derived substantially all of his wealth and livelihood from his relationship with the Company making him not disinterested or independent. The lack of independence and financial benefits received by defendant Simon renders him incapable of impartially considering a demand to commence and vigorously prosecute this action. Furthermore, the Company's most recent annual proxy statement concedes that defendant Simon is not an independent director. As such, defendant Simon cannot independently consider any demand to sue herself for breaching his fiduciary duties to the Company, as that would expose him to substantial liability and threaten his livelihood.

75.     Defendants Blaszyk (Chair), Cohen, Selecky, and Maxwell are not disinterested or independent and, therefore, are incapable of considering demand because they served during the Relevant Period and continue to serve as members of the Audit Committee. Pursuant to the Audit Committee Charter, the purpose of the Audit Committee is to assist the Board in fulfilling its oversight responsibilities related to, among other things, accounting, legal, regulatory, and public disclosure requirements. Thus, defendants Blaszyk, Cohen, Selecky, and Maxwell were responsible for knowingly or recklessly allowing the improper statements giving rise to the FDA's Warning Letter and alleged herein. Despite their knowledge or reckless regard, defendants Blaszyk, Cohen, Selecky, and Maxwell caused these improper statements.  For these reasons, defendants Blaszyk, Cohen, Selecky, and Maxwell breached their fiduciary duties, face a substantial likelihood of liability, are not independent or disinterested, and thus demand upon them is futile and, therefore, excused.

76.     In violation of the Code of Conduct, the Individual Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to make and/or cause the Company to make materially false and misleading statements to

27
Verified Shareholder Derivative Complaint

the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and violations of the Exchange Act. In further violation of the Code of Conduct, the Individual Defendants failed to comply with laws and regulations, maintain the accuracy of Company records and reports, avoid conflicts of interest, conduct business in an honest and ethical manner, and properly report violations of the Code of Conduct. Thus, the Individual Defendants face a substantial likelihood of liability, and demand is futile as to them.

77. ImmunityBio has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants have not filed any lawsuits against themselves or any others who were responsible for that wrongful conduct to attempt to recover for ImmunityBio any part of the damages ImmunityBio suffered and will continue to suffer thereby. Thus, any demand upon the Board would be futile.

78. The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Individual Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Individual Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

79. The acts complained of herein constitute violations of fiduciary duties owed by ImmunityBio's officers and directors, and these acts are incapable of ratification.

80. The Individual Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors'

Verified Shareholder Derivative Complaint

and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of ImmunityBio. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Individual Defendants were to sue themselves or certain of the officers of ImmunityBio, there would be no directors' and officers' insurance protection. Accordingly, the Individual Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Board is futile and, therefore, excused.

81. If there is no directors' and officers' liability insurance, then the Individual Defendants will not cause ImmunityBio to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

82. Thus, for all of the reasons set forth above, all of the Individual Defendants, and, if not all of them, at least five of the current Board members, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## **FIRST CLAIM**

### **Against the Individual Defendants for Breach of Fiduciary Duties**

83. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

84. Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of ImmunityBio's business and affairs.

Verified Shareholder Derivative Complaint

85. Each of the Individual Defendants violated and breached their fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

86. The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of ImmunityBio.

87. In breach of their fiduciary duties owed to ImmunityBio, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and/or omissions of material fact. The Individual Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

88. In further breach of their fiduciary duties, the Individual Defendants failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and/or omissions of material fact referenced herein, which renders them personally liable to the Company for breaching their fiduciary duties.

89. Also, in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain internal controls.

90. The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly issue materially false and misleading statements, and they failed to correct the Company's public statements and representations. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of ImmunityBio's securities.

91. These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

92.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, ImmunityBio has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

93.     Plaintiff, on behalf of ImmunityBio, has no adequate remedy at law.

## SECOND CLAIM

### Against the Individual Defendants for Unjust Enrichment

94.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

95.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, ImmunityBio.

96.     The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from ImmunityBio that was tied to the performance or artificially inflated valuation of ImmunityBio, or received compensation or other payments that were unjust in light of the Individual Defendants' bad faith conduct. This includes lavish compensation, benefits, and other payments provided to the Individual Defendants who breached their fiduciary duties to the Company.

97.     Plaintiff, as a shareholder and a representative of ImmunityBio, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, the redemption of preferred stock, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

98.     Plaintiff, on behalf of ImmunityBio, has no adequate remedy at law.

## THIRD CLAIM

Verified Shareholder Derivative Complaint

**Against the Individual Defendants for Abuse of Control**

99. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

100. The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence ImmunityBio, for which they are legally responsible.

101. As a direct and proximate result of the Individual Defendants' abuse of control, ImmunityBio has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

102. Plaintiff, on behalf of ImmunityBio, has no adequate remedy at law.

## FOURTH CLAIM

**Against the Individual Defendants for Gross Mismanagement**

103. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

104. By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of ImmunityBio in a manner consistent with the operations of a publicly held corporation.

105. As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, ImmunityBio has sustained and will continue to sustain significant damages.

106. As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

107. Plaintiff, on behalf of ImmunityBio, has no adequate remedy at law.

## FIFTH CLAIM

**Against the Individual Defendants for Waste of Corporate Assets**

108. Plaintiff incorporates by reference and re-alleges each and every allegation set

32

Verified Shareholder Derivative Complaint

forth above, as though fully set forth herein.

109. The Individual Defendants caused the Company to pay the Individual Defendants excessive salaries and fees, to the detriment of the shareholders and the Company.

110. As a result of the foregoing, and by failing to properly consider the interests of the Company and its public shareholders, the Individual Defendants have caused ImmunityBio to waste valuable corporate assets, to incur many millions of dollars of legal liability and/or costs to defend unlawful actions, to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

111. As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

112. Plaintiff, on behalf of ImmunityBio, has no adequate remedy at law.

## SIXTH CLAIM

**Against Defendant Soon-Shiong for Contribution Under Sections 10(b) and 21D of the Exchange Act**

113. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

114. ImmunityBio and defendant Soon-Shiong are named as defendants in the Securities Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to defendant Soon-Shiong's willful and/or reckless violations of his obligations as an officer and director of the Company.

115. Defendant Soon-Shiong, because of his position of control and authority as an officer and director of the Company, as well as its founder and controlling stockholder,

Verified Shareholder Derivative Complaint

was able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts complained of herein and in the Securities Action.

116.    Accordingly, defendant Soon-Shiong is liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

117.    As such, ImmunityBio is entitled to receive all appropriate contribution or indemnification from defendant Soon-Shiong.

## **PRAYER FOR RELIEF**

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of ImmunityBio, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to ImmunityBio;

(c)    Determining and awarding to ImmunityBio the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)    Directing ImmunityBio and the Individual Defendants to take all necessary actions to reform and improve ImmunityBio's corporate governance and internal procedures to comply with applicable laws and to protect ImmunityBio and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws and/or Certificate of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and develop

Verified Shareholder Derivative Complaint

and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2. a provision to permit the shareholders of ImmunityBio to nominate at least five candidates for election to the Board;

3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations;

(e) Awarding ImmunityBio restitution from Individual Defendants, and each of them;

(f) Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 17, 2026                    Respectfully submitted,

**SHUMAN, GLENN & STECKER**

*/s/ Kip B. Shuman*
Kip B. Shuman, SBN 145842
100 Pine Street, Suite 1250
San Francisco, CA 94101
Telephone: (303) 861-3003
Facsimile: (303) 536-7849
Email: kip@shumanlawfirm.com

Brett D. Stecker
326 W. Lancaster Ave.
Ardmore, PA 19003
Telephone: (303) 861-3003
Facsimile: (303) 536-7849
Email: brett@shumanlawfirm.com

Verified Shareholder Derivative Complaint

*Attorneys for Plaintiff*

36

Verified Shareholder Derivative Complaint

## ImmunityBio, Inc. Verification

I, Roland Davies, hereby verify that I am familiar with the allegations in the Verified Shareholder Derivative Complaint (the "Complaint"), and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

Date: _APRIL 9, 2026_

_____
Roland Davies